No. 3601

Second Circuit

(Second Division)

———

**ENGLISH v. BARBEE**

———

(June 11, 1931. Opinion and Decree.)
(July 16, 1931. Rehearing Refused.)

———

Seals & Atkins and William P. M. Meadow, of Homer, attorneys for plaintiff, appellee.

T. T. Land, of Homer, attorney for defendant, appellant.

CULPEPPER, J. Plaintiff sues to recover damages for the loss of a mule, alleged to have been caused by the negligence of defendant's employee in the operation of a motor vehicle belonging to defendant, upon a public highway near Homer in Claiborne parish. From a judgment in favor of plaintiff in the sum of $150, with legal interest from November 15, 1927, defendant prosecutes this appeal.

Plaintiff alleges that on November 15, 1927, while driving in a careful manner, his pair of mules hitched to his wagon, and keeping to the right-hand side of the road, on the public highway between Homer and Lisbon in Claiborne parish, one James Kimbell, an employee of defendant, driving defendant's truck with attached trailer loaded with lumber, approached plaintiff from the rear, and without any warning signal attempted to and did pass petitioner; that said Kimbell was driving said truck in a careless manner, without brakes or any horn or signaling device thereon; that petitioner was not aware of the approaching truck or that it was going to pass him until the front part of the truck suddenly appeared along to his left side in such close proximity to his wagon and mules that his mules became frightened, causing them to shy; that petitioner endeavored to get his mules under control and would have done so had the driver stopped the truck; that the driver, instead of stopping the truck, continued on past petitioner and as he did so the lumber on the truck struck petitioner's left mule about its head, causing it to rear to the side,

swinging its hind legs toward the left, and the rear wheels of the trailer ran over and broke the mule's left hind leg; that the mule was thereby rendered worthless and had to be killed. Petitioner alleges his mule was worth $150. He alleges the injury and loss of the mule was due to the gross negligence on the part of the driver of the truck, for which the defendant, as employer of the driver and owner of the truck and trailer, is liable in damages. Plaintiff also prayed for $50 attorney's fees. Defendant being a non-resident, an attachment was prayed for and granted, attaching certain of his property within the jurisdiction of the court.

Defendant through his curator appointed by the court, filed an answer of general denial, and alleged that the accident and resultant injury was due solely to the negligence of plaintiff in not having his mules under control at the time of the accident. He admitted that the truck had no horn or signaling device attached at the time.

Upon these issues the case went to trial, resulting in judgment for plaintiff as hereinabove stated. The attachment, however, was dissolved. The judgment is silent as to the claim for attorney's fees. We presume the claim was abandoned, as no testimony was adduced in support of same. There is no testimony in the record in support of grounds for the attachment, and it will be presumed same was dissolved for that reason.

### MERITS

Plaintiff's testimony upon the trial of the case was at variance in some particulars with the allegations in his petition. However, no objections were urged to the testimony.

The testimony discloses substantially the facts to be as follows:

Plaintiff, on the occasion of the accident, was driving his wagon and pair of mules along the public highway in a prudent manner, keeping well to his right. The wagon was covered with a sheet supported by bows to which the sheet was fastened down by cords—simply what is commonly known as a "covered wagon." He was seated on his spring seat in front, and had a bale of lint cotton loaded on the wagon. His rear view was therefore obstructed. He had reached a point at or about the foot of one hill and apparently approaching the ascent of another, when suddenly and unexpectedly to him, as well as to the mules he was driving, defendant's truck with a trailer loaded with lumber and driven by his truck driver, James Kimbell, approached plaintiff from the rear. The truck had descended the hill from behind with its gears in neutral, or as we call it, "coasting" down the hill. It was making little if any noise, especially an unusually small amount of noise. As it reached the bottom of the hill and when within a few feet of the wagon, the driver threw his truck into gear, which caused a sudden and unusual noise which frightened the mules. The truck driver in the meantime had given no warning nor signal of any kind to plaintiff of his approach. In fact, he had no horn nor signaling device on the truck. Notwithstanding the frightened condition of the mules thus brought about by the noiseless approach and sudden and unusually loud noise resulting from shifting the gears of the truck, and lack of warning to plaintiff, all of which constituted gross negligence on the part of the truck driver, the latter, according to his own testimony, made no effort to slow down or stop the truck, but continued driving, swerved to the left and came along by the side of the wagon, at about which time plaintiff discovered what it was, but before he had time to rein up his mules and bring them

under control, the truck had advanced to a point that the lumber struck the mule nearest to it somewhere about the head, at about which time plaintiff, evidently in an effort to bring his mules to a stop, and not having had time to bring them under control with his reins, hollered "whoa" to them. The inside mule apparently obeyed and stopped, but the off or outside mule did not. The continued forward movement of the outside mule and the effort being made by the inside mule to stop, swerved the mules and wagon to the left or toward the center of the road and into the path of the oncoming trailer; and, as a result of which, the trailer's wheels struck the left hind leg of the inside mule and broke it. The truck driver testified he saw the outside mule rear and lunge just as he was approaching even with the mules but saw nothing more of their movements after that on account of the lumber obstructing his view. He therefore concluded that it was in the fault of that mule, also that plaintiff should have been able to control the mules, and thus avoid the accident. He certainly could not have expected plaintiff to do an impossible thing in an impossible length of time. He had, through his own negligence precipitated the mules into a panic without the slightest forewarning to plaintiff or his mules, so as to give plaintiff time and afford him an opportunity to keep his mules under control, or to bring them under control after they had become frightened. It was negligent in the driver of the truck to pass on by the mules when he knew, or should have known, their frightened condition. He says he could have stopped but did not think it necessary. He did not use prudence in not stopping under the circumstances. The law requires a person operating a motor vehicle to bring it to a stop when approaching a horse being driven if such animal appears to be frightened, and if traveling in the same direction as that of the animal, the operator shall use all reasonable precaution in passing. (Act No. 232 of 1926, sec. 15.) The truck driver in this instance admits on the witness stand that he saw this outside mule just as he came up to the wagon and saw that the mule was frightened, and that it was frightened just as he started to pass around the wagon. He also admits that he placed the truck in gear when he was "a little behind him" (the wagon).

He was asked:

"Q. You put your car in gear a little behind him?
"A. Yes, sir.
"Q. I'll ask you in doing this, if that does not create an extraordinary noise in the motor?
"A. Yes, sir, a little unusual.
"Q. And you did that just a little to the back of the wagon?
"A. Yes, sir, just behind the wagon.
"Q. Do you think this was enough to frighten them?
"A. Well, yes, sir."

It is evident that the driver was negligent in not stopping the truck under such circumstances as disclosed here. His continued negligence in proceeding to pass the wagon and mules finally resulted in the accident and injury. We cannot see, under the circumstances, how plaintiff could have avoided the accident. He apparently did what he could to extricate his team of mules from the peril they had been placed in by the negligent acts of defendant's truck driver. No negligence can be chargeable to plaintiff under the circumstances. Defendant is liable for the faults of his servant. The value of the mule was fully proven to amount to the sum claimed. The lower court gave judgment for that amount. We think the judgment correct and it is therefore affirmed.